J-S31016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.A.B. A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.N., FATHER | : | No. 869 EDA 2021 |

Appeal from the Decree Entered March 30, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2020-A0089

| | | |
|---|---|---|
| IN RE: N.A.B. A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.N., FATHER | : | No. 870 EDA 2021 |

Appeal from the Decree Entered March 30, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2020-A0090

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY KING, J.:                          Filed: November 5, 2021

Appellant, J.N. ("Father"), appeals from the decrees entered in the Montgomery County Court of Common Pleas Orphans' Court, granting the petition of Appellees, S.B. ("Mother") and S.W. ("Stepfather"), for involuntary termination of Father's parental rights to his minor children, J.A.B. and N.A.B.

_____

* Retired Senior Judge assigned to the Superior Court.

("Children"). We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Mother] and [Father] separated in 2008 and commenced custody proceedings with respect to their older child, N.A.B., at that time. The younger child, J.A.B., was born in 2012. Custody orders were issued and modified numerous times including in 2013, 2016 and 2017 and thereafter….
>
> Testimony from [Mother] and other witnesses established that [Father] frequently yells at [Mother] over the telephone, seeks to intimidate her, and that on occasion this has occurred over the speakerphone while [Mother] had the children with her in a car. [Mother] testified [that Father] has repeatedly threatened her life or threatened her with bodily harm, and has threatened the life of her husband, [Stepfather].
>
> \* \* \*
>
> The children state that they do not want to be around [Father] because they cannot predict how he will act on any given occasion. They have also indicated they do not feel secure with [Father] and are afraid of him.
>
> In the summer of 2019, his son, N,A.B., stopped attending visits with [Father]. … Testimony from several witnesses indicates that N.A.B. heard [Father] tell [N.A.B.] that [Father] no longer wants to be his father, which hurt N.A.B, and created a wedge in their relationship. Since the summer of 2019, N.A.B. has continually refused visits with [Father] and has indicated that he is uncomfortable around him because he does not know how he's going to act. [Father]'s visits with [J.A.B.] continued until November 2019….
>
> \* \* \*
>
> On November 7th, 2019, the [Orphans' Court] granted [Mother]'s petition for modification and entered a new custody order that required that all visits between [Father]

and the children be supervised visits, and specifying that the visit supervisor should be a person approved by [Mother]. According to her testimony, [Mother] sought this custody order because [Father] was threatening her and displaying unstable behavior….

[Mother] identified Ms. Angela Giannone[1] to be the supervisor and notified [Father] of this on December 22, 2019. [Father] responded angrily and stated that he didn't think he needed his visits supervised….

After the November 2019 order, an order scheduling conciliation for November 25, 2019 was entered. [Father] did not appear before the conciliator….

On January 14, 2020 the [Orphans' Court] issued a new custody order that suspended [Father]'s weekend visits, required him to have a supervisor for his Wednesday visits, and ordered him to attend an anger management program….

A custody conciliation was scheduled for February 10, 2020 … and [Father] did not attend….

… The [Orphans' Court] issued a new custody order dated June 17, 2020 that gave [Mother] sole physical and legal custody of [Children], suspended [Father]'s Wednesday visits, and again required [Father] to complete six sessions of anger management before he could resume visits with his children….

… [Father]'s testimony confirms that he was aware of the custody order from the November 7, 2019 and the custody order from June 17, 2020 hearing. Despite knowing about these orders, [Father] made no effort to comply with the order or request modification of the custody order.

(Orphans' Court Opinion, filed March 30, 2021, at 4-5, 10, 12-15) (internal record citations omitted).

---

[1] Ms. Giannone is a friend of Mother's who testified on her behalf at the termination hearing.

On July 10, 2020, Appellees filed a petition for involuntary termination of Father's parental rights. The court conducted termination hearings in regard to both children on January 13, 2021 and January 14, 2021. On March 30, 2021, the court entered decrees involuntarily terminating Father's parental rights to both children. On April 24, 2021, Father timely filed separate notices of appeal and concise statements of errors complained of on appeal for each trial court docket number. This Court consolidated the appeals *sua sponte* on May 10, 2021.

Father raises the following issues for our review:

> The [Orphans' Court] committed an error of law and/or abuse of discretion when it held that [A]ppellee[s] had proven by "clear and convincing evidence" that [Father]'s parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1) where [Father] tried to have contact with the minor children but was subjected to parental alienation by [Mother] as evidenced by the testimony at the hearing and that there was not clear and convincing evidence of conduct, sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to the children or a refusal or failure to perform parental duties.
>
> The [Orphans' Court] committed an error of law and/or abuse of discretion when it held that [A]ppellee[s] had proven by "clear and convincing evidence" that [Father]'s parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2) in that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child[ren] to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent where [Father] tried to have contact with the minor children but was subjected to parental alienation by [Mother] as evidenced by the testimony at the hearing.

- 4 -

The [Orphans' Court] committed an error of law and/or abuse of discretion when it terminated [Father]'s parental rights pursuant to 23 Pa.C.S. § 2511(b) on the basis that the developmental, physical emotional and welfare of the child[ren] was best served by termination of [Father]'s rights where [Father] tried to have contact with the minor children but was subjected to parental alienation by [Mother] as evidenced by the testimony at the hearing.

(Father's Brief at 5).

On appeal, Father argues that he tried to call and text Children during the six months prior to the filing of the termination petition but received no response. Father alleges that Mother alienated Children from him by refusing to co-parent, failing to encourage Children to visit him, excluding him from important aspects of Children's lives such as therapy sessions and school events, and trying to have him arrested. Father maintains Appellees failed to present clear and convincing evidence of his refusal to perform parental duties and/or his refusal or incapacity to parent causing Children to be without essential care. Further, Father contends that he has an important bond with Children and terminating his parental rights would have a negative effect on the developmental, physical and emotional needs and welfare of the children. Father concludes the court erred in terminating his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b). We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence,

- 5 -

and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

Appellees filed a petition for the involuntary termination of Father's parental rights on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*    \*    \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a), (b).

"A court may terminate parental rights under subsection 2511(a)(1)

when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition." *In re I.J., supra* at 10.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

"The bases for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re S.C.B.*, 990 A.2d 762, 771 (Pa.Super. 2010). "Parents are required to make diligent

efforts towards the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa.Super. 2002). Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117. Additionally,

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying

close attention to the effect on the child of permanently severing the bond." *Id.* (internal citations omitted). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

After a thorough review of the certified record, the parties' briefs, and the relevant law, we conclude the Orphans' Court's decision is supported by competent evidence. *See id.* Consequently, we affirm the decrees terminating Father's parental rights for the reasons stated in the March 30, 2021 opinion filed by the Honorable Lois E. Murphy.

Regarding Section 2511(a)(1), Judge Murphy noted that Father was aware of the June 2019 and November 2019 custody orders. Nevertheless, Father made no effort to enroll in or complete anger management classes and resume visits with Children. (*See* Orphans' Court Opinion at 17). Father also made no effort to coordinate with a professional supervisor to resume visits with Children. (*Id.*) Father's own actions and words created a rift between him and N.A.B., such that N.A.B. refused visits with Father. (*Id.* at 18-19). Due to his own conduct, Father has not had a visit with N.A.B. since the summer of 2019, or with J.A.B. since November 2019. (*Id.* at 17).

Other than a few text messages, Father has taken no affirmative actions to maintain a loving and supportive relationship with his children. (*Id.* at 20). Father failed to provide a credible explanation for his failure to take steps to

maintain a relationship with his children.[2]  Thus, Judge Murphy determined that Father failed to perform parental duties for the six-month period prior to the filing of the termination petitions.  *See In re I.J., supra*.

Regarding Section 2511(a)(2), Judge Murphy observed that Father refused to comply with various custody orders which would have allowed him to see Children.  Father's conduct deprived Children of the love and affection of their biological father.  (*See* Orphans' Court Opinion at 23-24).  Father demonstrated that he cannot or will not remedy the problem by repeatedly refusing to comply with custody orders and/or participate in mediation and conciliation efforts.  *Id.*  Further, Father's "long history of volatility and anger, paired with his unwillingness to attend anger management, make him incapable of providing security, safety and permanency for his children."  (*Id.* at 25).

Regarding Section 2511(b), Judge Murphy observed that there is no healthy parental bond between Father and Children.  (*Id.* at 27).  As a result of Father's actions, Children have no desire to see him or talk to him.  *Id.*  Conversely, Mother and Stepfather have provided for all of Children's physical needs, and Father has undertaken little to no effort to contribute.  *Id.*  Further, Children have a strong parental bond with Stepfather who spends quality time

---

[2] We acknowledge Father's argument that the Orphans' Court failed to consider his testimony that Mother alienated Children from him.  We emphasize, however, that the Orphans' Court was the fact-finder and sole determiner of credibility.  *See In re Adoption of A.C.H., supra*.

with them engaging in their favorite activities.  (***Id.*** at 28).  Thus, Judge Murphy determined that Children's needs and welfare would be best served by terminating Father's parental rights.  ***See In re Z.P., supra***.  As to the foregoing points, we adopt Judge Murphy's reasoning as our own. Accordingly, we affirm the decrees involuntarily terminating Father's parental rights to Children.

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/5/21

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

ORPHANS' COURT DIVISION

NO: 2020-A0090
NO: 2020-A0089

IN RE: ADOPTION OF N.A.B.
IN RE: ADOPTION OF J.A.B.

## OPINION SUR PETITIONS FOR
## TERMINATIONS OF PARENTAL RIGHTS

**Murphy, A.J.**                                   **March 30, 2021**

Petitioners, birth mother, S.B., and step-father, potential adopter, S.W., filed *pro se* petitions to terminate the parental rights of birth father, J.N., to these children, J.A.B., who was born March   2012 and is now 9 years  old, and N.A.B., who was born August  2008 and is now 12 years and six months old.

A hearing on these two petitions was originally scheduled for September 30, 2020, at which time it was noted that birth father, J. N., had not been personally served the petitions and did not have counsel. The hearing was continued to October 22, 2020. This Court appointed Sharon Hofer, Esquire with MCAP as legal counsel for both children on October 2, 2020. Petitioners, S.B. and S.W. hired private counsel, Jason Donoghue, Esquire. On October 22, 2020, the court determined that birth father needed counsel appointed, and Sean Cullen, Esquire was appointed as counsel for birth father, J.N.  The hearing was rescheduled and a two-day hearing was held on January 13 and January 14, 2021.

A NOTICE, AS REQUIRED UNDER RULE 4.6, SENT ON 04/08/2021

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The petitions to terminate the parental rights of the birth father were filed on July 10, 2020 and allege the following grounds as bases for terminating parental rights: § 2511 (a)(1) and 2511(a)(2) of the Adoption Act.

The Petitioners must prove their case by clear and convincing evidence. The standard of clear and convincing evidence is a threshold to termination of parental rights that was established by the United States Supreme Court in the case of *Santosky v. Kramer*, 455 U.S. 745 (1982). This standard is defined as testimony that is so clear, direct, weighty and convincing as to enable this Court to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted . . . provided it 'carries conviction to the mind' or carries 'a clear conviction of its truth.' *LaRocca Trust*, 411 Pa. 633, 192 A.2d 409 (1963).

## STATUTORY OVERVIEW

To establish a basis for termination of parental rights under 23 Pa. C.S.A. §2511(a)(1) the Petitioners must establish that: "The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

23 Pa. C.S.A. §2511(a)(2) provides that a ground for termination of parental rights may be established where "the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

2

The Petitioners bear the burden of proving each element of these sections by the standard of clear and convincing evidence.

Under section (a)(1) this Court must consider whether the parent has failed or refused to perform parenting responsibilities for the six months preceding the filing of the petition; or whether the parent has evidenced a settled purpose of relinquishing a parental claim.

Under section (a)(2), this Court must consider whether Petitioners have proved abuse or neglect by clear and convincing evidence or whether Petitioners have proved incapacity to parent, or whether Petitioner has proved a refusal to parent. In this case, although there has been no proof of physical abuse of either child by the birth father, this Court must evaluate whether Petitioners have proven by clear and convincing evidence that the birth father has refused to provide or has an incapacity to provide the minimum requirements to which all children are entitled from a parent.

The Pennsylvania Superior Court has identified certain irreducible minimum requirements to which all children are entitled from their parents, including adequate housing, clothing, food, love and supervision. *In re Diaz*, 669 A.2d 372 (Pa. Super. 1995). The grounds for terminating parental rights may consist of a lack of capacity and not just affirmative misconduct. *In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993).

## FACTUAL BACKGROUND

This case concerns the relationship of a birth father with his two children, in the context of a long-running series of disputes between the birth mother and birth father,

3

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

many of which have been the subject of recurring proceedings for custody and for modification of custody orders in the family division of the Court of Common Pleas of Montgomery County. Birth mother and birth father separated in 2008 and commenced custody proceedings with respect to their older child, N.A.B., at that time. The younger child, J.A.B., was born in 2012. Custody orders were issued and modified numerous times including in 2013, 2016 and 2017 and thereafter. From 2017 until the summer of 2019, the birth father had weekly visits with both of his children pursuant to a series of child custody orders. However, beginning in June 2019 his son, N.A.B., refused to attend visits with him. After November 2019, J.N. never complied with the specific requirements of the applicable custody orders and has not had any visits with either of his children, nor has birth father, J.N., provided for either of the children physically or emotionally for a period of well over a year.

At the heart of this case are two narratives: voluminous testimony that birth father has a history of making verbal threats of bodily harm to birth mother and others as well as expressing anger and yelling at the children and the birth mother; and a lengthy period now over 16 months during which birth father has simply not attended visits with the children and not played a role in their lives.

While most of the instances of his anger and threats have been directed toward birth mother, some have also been directed to the step-father, and some have been made in the presence of the children. The testimony and evidence demonstrated frequent episodes of extreme anger and volatile behavior by birth father to which the children were exposed. He has on multiple occasions yelled at the children, threatened their mother in their presence, and even suggested that he wished mother and children would

4

die, and made the children feel frightened and uncomfortable, to such an extent that both of the children no longer want to attend visits or have any phone calls or any relationship with him. What sets this case apart from many contested and contentious custody matters, is that in this case not only is there anger, animosity and volatile behavior directed by birth father toward the birth mother, but the birth father has allowed that volatility to spill over into his relationship with his children, to such an extent that they no longer wish to have any visits with him, and no longer feel safe and secure with him. Moreover, given repeated opportunities to engage in anger management and supervised visits, birth father has not taken the steps necessary to repair and maintain his relationship with the children. For over 16 months he simply has not related to the children as a father.

Testimony from birth mother and other witnesses established that birth father frequently yells at birth mother over the telephone, seeks to intimidate her, and that on occasion this has occurred over the speakerphone while birth mother had the children with her in a car. (N.T. 1/13/21 pp. 25, 2-7; 78, 5-9; 78, 18-20; 90, 17-20; 104- 105; 113- 114; 141, 18-24). Birth mother testified the birth father has repeatedly threatened her life or threatened her with bodily harm, and has threatened the life of her husband, S.W. (N.T. 1/13/21 pp. 23-24; 186, 9-21; 189, 15-24; 194, 8-14).

Birth mother testified that on one occasion in 2019, when she was talking to birth father on a phone while in a car, birth father audibly wished that she would crash the car and die, in the hearing of N.A.B. and her youngest child. (N.T. 1/13/21 p. 207, 14-23). This expression frightened N.A.B. and damaged birth father's relationship with N.A.B. Birth father admits making this statement, but attempts to minimize it, explaining that he intended in reference only to S.B., not to the children. (N.T. 1/14/21 p. 248, 2-13). Birth

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

mother introduced in evidence a series of text messages in which birth father threatened the life of the step-father, S.W. and in which he repeatedly wished birth mother dead, to support her testimony about his frequent abusive language, death threats and threats of bodily harm. (N.T. 1/13/21 pp. 186, 9-21, 189, 15-24; 194, 8-14; 198, 2-4; N.T. 1/14/21 p. 39, 16-22).

Multiple witnesses testified to hearing birth father through birth mother's phone, even when it was not on speakerphone, because he yells so loud. (N.T. 1/13/21 pp. 90, 17-20; 105, 5-6). Birth mother testified that conversations with birth father escalate quickly to yelling and threats. (N.T. 1/14/21 pp. 36-37). Multiple witnesses testified that they have heard birth father threaten birth mother in person and on the phone. In 2017, N.A.B. witnessed an interaction between birth father and birth mother where birth father was screaming at birth mother, wished her and the kids' deaths, and called his son, N.A.B., then nine years old, an "asshole." (N.T. 1/13/21 p. 100, 2-16). This damaged N.A.B.'s relationship with his father and N.A.B. could not understand what he did for his dad to call him an "asshole." (N.T. 1/13/21 pp. 106-107).

N.A.B. wrote a letter to the Court in October 2019 in which he stated that J.N. is "raging all the time" and "has been yelling at everyone and saying really hurtful things to my entire family and me." N.A.B. also reported that J.N. told him and his sister, "I am not your dad anymore. Call [S.W.] dad and don't talk to me anymore." Exhibit M-2. Both N.A.B. and J.A.B. have indicated that they heard J.N. say he does not want to be their father. (N.T. 1/13/21 pp. 127, 19-25; 130, 9-21). Testimony from S.W. indicates that J.A.B. told him that she did not want to be around J.N. because of the way he treats her mother and the family. (N.T. 1/13/21 p. 65, 5-11).

Angela Giannone, a friend of S.B., testified that on an occasion in the summer of 2018 she was asked by S.B. to pick up the two children from J.N.'s home after they had been there for a visit and he refused to turn over the children until the police were called. (N.T. 1/13/21 p. 74.) Ms. Giannone also testified to numerous issues that arose around the pick up or drop off of the children, including that J.N. would on some occasions fail to arrive or refuse to accept the children if another person other than S.B. attempted to drop them off. She also testified that between the summer of 2017 and the summer of 2019, N.A.B. would frequently express that he was upset when he returned to his mother's home after a visit to J.N., and frequently expressed that he did not want to go to J.N.'s home. (N.T. 1/13/21 pp. 85-86.)

A neighbor, Ms. Maria DeGideo-Kelly, who lives across the street from S.B.'s father's house, testified that she witnessed an incident in approximately the early fall of 2017, during which J.N. "was screaming, yelling and carrying on at [S.B.]." She testified that she was outside at her own home and that she observed the parties' son, N.A.B., hiding but listening while his father, J.N., was screaming. She testified that she heard him screaming that the child, N.A.B., then age 9, "is an asshole," and also that he screamed, directed toward the birth mother, S.B., "I hope you f***ing die. . . . I hope when you leave your car crashes and you and the kids die." (N.T. 1/13/21, pp. 99-100.) On the same occasion, she said she observed J.N. to pin S.B. against the front door of her father's house. (N.T. 1/13/21, p. 106.) She observed that on other occasions when J.N. would come to the house, his son, N.A.B. would avoid him, sometimes by staying in his own room, and other times by coming across the street to Ms. DeGideo-Kelly's home and playing with her dog. *Id.*

7

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Stephon Howard, a family friend, testified to an incident that occurred on the morning of Thanksgiving, 2019, when he had taken the two children, N.A.B. and J.A.B. to a Wawa. J.N. called J.A.B. on her phone and she answered and put the phone on speaker. He asked where they were and she replied that they were out at Wawa. J.N. then asked to speak to Mr. Howard and then said, "Tell that F'n N****r to get you home . . . ." (N.T. 1/13/21, p. 133.) Then J.A.B. hung up the phone and both children expressed that they could not believe he would say that. *Id.* Mr. Howard testified that on another occasion, S.B. was in a parked car having a telephone conversation with J.N. over the Bluetooth system and Mr. Howard was present and able to hear J.N. and he heard him express his wish that S.B. and the children would die in a car crash. (N.T. 1/12/21, p. 142.) Mr. Howard also testified that he never heard either S.B. or S.W. to discourage the children from visiting with J.N. or from having a relationship with J.N., and indeed that they attempted to encourage the children to attend visits in accord with the court orders, but that each of the children themselves expressed that they were not comfortable with J.N. and did not want to visit with him.

The birth mother, S.B., testified that on or about June 25, 2017, when her children were with her father and she was out, she received a text message from J.N. in which he said, "Have a nice life. I'm out. Already talked to the kids." (N.T. 1/13/21, p. 196.) She testified that on that occasion, while she was out, J.N. had arrived at her father's house and had told the children not to call him Dad anymore, and instead to call S.W. Dad, and that he was "done being a father." *Id.* When she arrived home her son, N.A.B., was in tears. She testified that the children were very upset by this incident.

8

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

S.B. also testified to an incident on May 9, 2017, when J.N. pulled a knife out when she was talking with him in the driveway of her father's home, and a neighbor had stopped his car to ask if she was okay. The children were present for the beginning of this incident, but a neighbor escorted the children away to her home across the street. After J.N. left, S.B. called the police and made a report. (N.T. 1/13/21, pp. 234-235.) S.B. testified to another incident on September 3, 2017, which was the day before J.N.'s sister's wedding, when the children were at the home of J.N., and N.A.B. called his mother and asked her to pick him up, and she contacted J.N. to see if she could pick up the children, and he told her to pick the children up, but then refused to cooperate with her picking the children up. She testified that his behavior did not seem stable and that this concerned her. (N.T. 1/13/21, p. 236-37.)

Text message and Facebook messenger evidence was admitted of J.N. threatening to break S.W.'s legs and that he is prepared to go to jail. (N.T. 1/13/21 pp. 189, 15-24; 192, 2-8). Messages from J.N. to S.B from 2018 were also admitted, in which J.N. expressed his wish that she would die and told her to kill herself. (N.T. 1/13/21 p. 200, 15-20).

Upon cross-examination, Alexis Fulcher, J.N.'s current girlfriend, testified regarding text messages she had sent to S.B., in which she indicated that she has not slept during her pregnancy from the stress of constantly arguing with J.N., that she was shaking, she is pregnant and doesn't know what to do, that J.N. was "going nuts," and that she's not going back to him. (N.T. 1/14/21 pp. 68, 2-16; 94, 21-22; 96, 13-15; 97, 8-13). She admitted that she called the police and filed an emergency PFA regarding an incident that occurred between her and J.N. on the same day that she sent these messages

9

to S.B., yet she attempted to explain away these messages, stating that the goal of her messages was to get S.B. to agree with her and meet up with her. (N.T. 1/14/21 pp. 65, 19-21; 66, 4-11; 93, 26-25). This Court did not find Alexis Fulcher's explanation of these messages credible.

The children state that they do not want to be around birth father because they cannot predict how he will act on any given occasion. They have also indicated they do not feel secure with birth father and are afraid of him. (N.T. 1/13/21 pp. 75, 11-20; 130, 4-8; 145-146).

In the summer of 2019, his son, N.A.B., stopped attending visits with J.N. From that time until November 2019, J.N. continued to have visits weekly, but only with his daughter, J.A.B. (N.T. 1/13/21 pp. 169-170). Testimony from several witnesses indicates that N.A.B. heard birth father tell him (N.A.B.) that he (birth father) no longer wants to be his father, which hurt N.A.B. and created a wedge in their relationship. (N.T. 1/13/21 pp. 32, 10-13; 87, 4-16; 127, 19-25; 197, 2-7; 201, 11-13; 239, 23-25). Since the summer of 2019, N.A.B. has continually refused visits with birth father and has indicated that he is uncomfortable around him because he does not know how he's going to act. (N.T. 1/13/21 pp. 82, 7-12; 145-146; 180, 5-12). J.N.'s visits with his daughter continued until November 2019. However after November 2019, when he would not comply with arranging visits with a supervisor, he has had no visits whatsoever with either of his children.

After a careful review of all of the evidence presented at trial, this Court concludes that the Petitioners have established a basis for termination of birth father's parental rights by clear and convincing evidence in that birth father has refused to

10

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

perform his parental duties, has an incapacity to parent, and this refusal and incapacity has not been and will not be remedied by the birth father.

This court is mindful of the irrevocable nature of a decree terminating parental rights, and of the significant differences in approaches, standards and outcomes between custody proceedings and petitions to terminate parental rights. Not every custody case that involves conflict between birth parents is an appropriate case for consideration of a petition for termination of parental rights. Indeed, in the vast majority of custody cases, a petition for termination of parental rights would be wholly inappropriate.

However this court is constrained to recognize that in an extreme case in which there is evidence of refusal to parent, incapacity to parent, and repeated statements and actions indicating an intent to relinquishing parental rights, which have been communicated to the children, this court has an obligation to engage in the analysis required under the Adoption Act and determine whether grounds for termination of parental rights have been established by clear and convincing evidence, and whether termination of parental rights will best serve the needs and welfare of the children.

Clearly, there is a tension between the law applicable in custody cases, pursuant to which remedial efforts towards restoring visits will be considered and therapy recommended, and the provisions of the statute establishing grounds for the permanent severing of parental rights under the adoption act. However, this tension is a subject best addressed by the legislature. This Court is obliged to apply the provisions of the law concerning grounds for termination of parental rights to the evidence presented in this case and render a decision upon the pending petitions.

11

## PROCEDURAL HISTORY OF CUSTODY ORDERS AND VISITS

As noted above, there has been a long series of custody orders and modification of custody orders from 2013 through 2017.

On November 7th 2019, the Court of Common Pleas of Montgomery County, Family Division, granted birth mother's petition for modification and entered a new custody order that required that all visits between the birth father and the children be supervised visits, and specifying that the visit supervisor should be a person approved by the birth mother. (See Custody Order dated November 7, 2019, *Bonamico v. Nelson*, Court of Common Pleas of Montgomery County, 2008-25136). According to her testimony, birth mother sought this custody order because birth father was threatening her and displaying unstable behavior. (N.T. 1/13/21 p. 164, 8-19).

With respect to the notice of the November custody hearing, J.N. testified that someone attempted to serve him, but did not hand it to him, and left it on his steps. (N.T. 1/14/21 230, 21-25). However he was aware that the November 2019 court order specified that his visits needed to be supervised. (N.T. 1/41/21 pp. 266, 20- 267, 16).

Birth mother identified Ms. Angela Giannone to be the supervisor and notified birth father of this on December 22, 2019. (N.T. 1/13/21 pp. 73, 6-20; 165, 11-16). Birth father responded angrily and stated that he didn't think he needed his visits supervised. (N.T. 1/13/21 pp. 165, 19-21). Despite the court order stating that birth mother was to choose the supervisor for the visits, birth father testified that he did not think he needed to have his visits supervised and that he did not trust Ms. Giannone because she has a friendship with the children's step-father, S.W. (N.T. 1/14/21 pp. 21, 5-11; 225-226).

12

After the November 2019 order, an order scheduling conciliation for November 25, 2019 was entered. J.N. did not appear before the conciliator. (N.T. 1/14/21 p. 232, 7-13). J.N. testified he did not know about this scheduled date for a meeting with the custody conciliator. (N.T. 1/14/21 p. 232, 14-15).

J.N. has maintained an address at an apartment on Swede Street in Norristown as his mailing address in connection with custody proceedings, which it appears is his mother's residential address and not the address where he has lived for most of time during the past several years. J.N. has not provided an updated address to the Court or Common Pleas and when contacted by the court after a notice of a March 2020 hearing had been returned to the court as undeliverable, he confirmed that the address listed on the docket was his address, even though mail addressed to him at that address is frequently not delivered.

He has not petitioned for modification of the custody orders, nor has he complied with the custody orders and arranged for supervised visits to resume.

On January 14, 2020 the Court of Common Pleas of Montgomery County, Family Division issued a new custody order that suspended J.N.'s weekend visits, required him to have a supervisor for his Wednesday visits, and ordered him to attend an anger management program. (N.T. 1/41/21 p. 234, 6-16). J.N. testified that he was not notified of this court proceeding or court order. (N.T. 1/41/21 p. 234, 17-19).

A custody conciliation was scheduled for February 10, 2020, by order of Judge Demchick-Alloy, and J.N. did not attend. (N.T. 1/14/21 p. 236, 5-9). He testified that he did not recall getting paperwork for that conciliation. (N.T. 1/14/21 p. 236, 12-16). A custody mediation was scheduled for February 11, 2020. (N.T. 1/14/21 p. 235, 14-22).

13

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Again, J.N. claims he did not get paperwork for that mediation. (N.T. 1/14/21 p. 236, 3-4).

After this matter had been postponed due to the COVID-19 emergency, a custody conference was scheduled for June 11 and a custody hearing was scheduled to proceed virtually, via Zoom, before the Honorable Richard Haaz on June 17, 2020 to consider birth mother's emergency petition to modify custody, which had been filed on January 24, 2020. J.N. acknowledged that he received notice for this June 17, 2020 hearing, but stated that he was not able to attend due to trouble with connecting to the Zoom hearing link (N.T. 1/14/21 p. 237, 20-25). J.N. did not appear by Zoom at the hearing, and did not file any opposition to the birth mother's custody petition, nor did he file a request for a continuance or a request for reconsideration. The Court of Common Pleas of Montgomery County, Family Division issued a new custody order dated June 17, 2020 that gave S.B. sole physical and legal custody of N.A.B. and J.A.B., suspended J.N.'s Wednesday visits, and again required J.N. to complete six sessions of anger management before he could resume visits with his children. (N.T. 1/13/21 pp. 166-167; N.T. 1/14/21 p. 238, 11-19). Once proof was provided that anger management was complete, J.N. could resume visits with his children with a professional supervisor. This order contemplated that the professional visit supervisor would be paid by J.N. (N.T. 1/14/21 p. 238, 11-19).

In his testimony, J.N. confirmed that his mailing address which he has provided to the court (which appears to be his mother's address and not the address where he lives) has not changed since 2017. (N.T. 1/14/21 pp. 217, 9-12; 220 - 221; 222, 6-11; 226-227). J.N.'s testimony confirms that he was aware of the custody order from the November 7,

14

2019 and the custody order from June 17, 2020 hearing. (N.T. 1/14/21 pp. 151-152). Despite knowing about these orders, J.N. made no effort to comply with the order or request modification of the custody order.

The court considers birth father's testimony regarding not receiving notice of some of the hearings self-serving and incredible. Even though there is some evidence that certain court notices were not delivered, his persistence in claiming an address where mail was not consistently delivered for him, his avoidance of court dates, avoidance of service of documents and failure to appear and failure to make any court filings on his own indicate an abandonment of his parental responsibilities.

## CONSIDERATION OF GROUNDS FOR TERMINATION UNDER §2511(a)(1)

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

"Parental duties" have been defined as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, the superior Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

15

*Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.*

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004)

Parental duty requires that the parent "act affirmatively with good faith interest and effort, and not yield to every problem, . . . even in difficult circumstances." *Id.* A parent must utilize all available resources and exercise reasonable firmness "in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* To be legally sufficient, post abandonment contact "must demonstrate a serious intent on the part of the parent to re-cultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role." *In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (*quoting In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999)).

Refusal to Perform Parental Duties

J.N. acknowledged that he was aware of the November 2019 custody order and the June 17, 2019 custody order, and yet, he has made no efforts to comply with the court-ordered anger management program, nor has he agreed to attend supervised visits with the children. As a consequence, he has not seen J.A.B. since November of 2019, and has not seen N.A.B. since the summer of 2019. Although he protests that he did not receive some of the notices of custody hearing, conciliation or mediation, his repeated failures to participate in court proceedings, his failure to assure that his correct mailing address is part of the court record, his failure to comply with custody orders over a lengthy period of time, and his failure to file any pleading or make any effort or argument seeking to resume visits or advancing his point of view, is evidence of a willful failure to comply with court orders and may also be considered evidence of his failure to seek to

16

maintain a relationship with his children. As of the dates of the hearing before this Court, on January 13 and 14, 2021, J.N. had not enrolled in or completed an anger management course in order to resume visits with his children. (N.T. 1/13/21 pp. 167, 17-23; 168, 4-6; N.T. 1/14/21 pp. 151, 11-20; 240, 3-9). J.N. testified that he did not think he needed anger management. (N.T. 1/14/21 p. 268, 12-21). J.N. has made no effort to agree upon, find, or hire a professional supervisor. (N.T. 1/31/21 p. 168, 7-9). J.N. has testified that he does not think he needs supervised visits. (N.T. 1/14/21 pp. 225, 3-4; 266-267).

As a result of his failure to take the steps required in the Custody Orders of the Court of Common Pleas, J.N. has deprived himself and his children of any visits or contact since November of 2019 in the case of J.A.B., and since the summer of 2019 in the case of N.A.B. Birth mother, S.B. testified that J.N. refused to arrange for supervised visits. (N.T. 1/13/21 p. 169, 22-24). Despite the November 7, 2019 court order, birth mother allowed J.N. to see N.A.B. and J.A.B. without supervision the day before Thanksgiving 2019, although only J.A.B. chose to participate in the visit. (N.T. 1/13/21 p. 169, 7-21). This visit, over 16 months ago, was the last time J.N. saw J.A.B.

Birth father's ability to have visits with his children, pursuant to the terms of the custody orders, was largely within his control and he did not take any meaningful steps to obtain anger management classes and to arrange for a visit supervisor, so that his weekly visits with his children could resume. Birth father has refused to overcome the obstacles in his way in order to comply with the custody orders and reunite with his children.

Thus, for a period of more than six months prior to the filing of the petitions for termination of parental rights, the birth father has had no visits with either child, and has

17

had virtually no contact with either child (other than a few text messages he sent in April 2020), and has sent no cards, birthday presents, Christmas presents, letters or other evidence of his love and affection for either of the children.

Settled Purpose to Relinquish Parental Claim

Birth father has also repeatedly expressed an intent to relinquish his parental claim dating back to at least 2017. These statements have been painful to the children and deeply damaging to his relationship with the children. Multiple witnesses testified that N.A.B. heard birth father tell him (N.A.B.) that he (birth father) no longer wants to be his father. (N.T. 1/13/21 pp. 32, 10-13; 87, 4-16; 127, 19-25; 197, 2-7; 239, 23-25). Moreover, J.N. has indicated through text messages to birth mother, S.B., on multiple occasions in 2019 that he no longer wants to father J.A.B. and N.A.B. Specifically, he has made comments such as "where do I sign?," "have a nice life, I'm out," and has showed up to birth mother's father's house and told the kids not to call him dad anymore. (N.T. 1/13/21 pp. 195, 9-18; 196, 9-17; 196, 18-21; 201, 11-13; 215- 216; 219, 2-8).

Despite testimony from multiple witnesses that this is what N.A.B. heard, J.N. testified that he never told N.A.B. he didn't want to be his father and that N.A.B. misunderstood. (N.T. 1/14/21 p. 164, 11-19). J.N. also testified that he sent the multiple messages about not wanting to be a father out of sarcasm. (N.T. 1/14/21 pp. 167, 20-22; 262, 3-7).

There is no doubt that J.N.'s repeated remarks and text messages, some of which were made in the presence of one or both of the children, as well as his behavior in not complying with court orders or seeking modification of court orders to resume visits,

18

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

taken together, have been profoundly damaging to his relationships with each of the children. His explanations of N.A.B. misunderstanding him and the messages being intended as sarcasm do not suffice to explain his history of actions and words in which he has repeatedly demonstrated his failure and refusal to be a responsible parent. Indeed, his behavior in failing to make any effort to repair relations with the children and to resume visits is even more important than his statements about no longer being a father in demonstrating his determination not to act as a father to these children.

Nevertheless, under all of the circumstances, this court concludes that his statements are evidence more of his volatility and failure to be responsible and to control his anger, than they are of a firm and settled purpose to relinquish his parental rights. The fact that he participated in the trial in opposition to the petition for involuntary termination of his parental rights, is further evidence that, although he has been volatile, behaved inappropriately and harmfully, and has been wildly inconsistent, this Court cannot conclude that he has demonstrated a settled purpose to relinquish his parental rights to both of the children.

However, his unkind and harmful expressions of anger, and his taking his anger out on the children themselves, contributes to this Court's conclusion that he has failed and refused to perform parental duties and to establish a maintain a healthy relationship with his children. Birth father has not provided love, protection, guidance or support for his children and has not acted affirmatively or used available resources to resist any obstacles in the way of maintaining a relationship with his children. Birth father has not utilized all available resources or exercised reasonable firmness in resisting the obstacles in his way of having a meaningful relationship with his children. Birth father simply

19

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

stopped complying with the custody orders, stopped appearing in Court, stopped making sure he received the Court's scheduling orders, and declined to obtain anger management classes and work to schedule visits with his children. As a result he has not seen his children since November 2019.

Birth father has provided no explanation for his failure to attend anger management classes. Birth father has not reached out to birth mother in an attempt to agree to a supervisor or to make other arrangements or accommodations in order to see his children. Birth father has sent four texts in the month of April, 2020, one group text in August 2020 to both children and one text in September of 2020. (N.T. 1/14/21 p. 249, 12-21). Aside from these few text messages, birth father has not sent birthday or Christmas cards or gifts to either of the children since 2018. (N.T. 1/13/21 pp. 36, 6-22; 138, 6-22).

In the six-month period prior to the filing of these petitions for termination of parental rights, from January 10, 2020 until July 10, 2020, birth father has both refused and failed to perform parental duties. Performance of parental duties requires affirmative performance and a genuine effort to maintain communication and association with the children, which birth father has not displayed. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

Birth father did not act affirmatively in any way, apart from sending a few text messages, to be a parent, to maintain a loving and supportive relationship with his children, or to overcome the obstacles in his way of parenting.

Where the court has determined that the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights for a period of six

20

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

months, the court must engage in three additional lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b). *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (*citing In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998)).

Birth father's explanation for his conduct of not maintaining visits with his children and for not complying with the requirements established by multiple custody orders of the Court of Common Pleas, is that he did not like or trust the person birth mother chose to act as a supervisor, he did not think a supervisor was necessary while visiting his children, and that he did not think he needed anger management. (N.T. 1/13/20 pp. 165, 19-21; 192, 23- 192, 11; N.T. 1/14/20 pp. 21, 5-11; 224, 19-21; 225, 3-4 and 15-25). Birth father briefly testified that he works during the night, making it more difficult to find anger management courses. (N.T. 1/14/20 p. 240, 6-9). However he also testified to being out of work since right before the COVID-19 pandemic (roughly February 2020) to two to three months before the hearing (roughly November 2020), giving him five months out of the relevant six month period to make progress in finding and completing the required six sessions of anger management. (N.T. 1/14/20 pp. 142, 9-19; 267-268). Birth father provided no evidence that he sought modification of the court orders that required him to complete anger management and that required supervised visits. Thus birth father's only explanation for his behavior is that he did not agree with the court orders and therefore did not comply, though he did not seek modification of the court orders.

21

Birth father's post-abandonment contact has consisted of a few individual and group text messages to the children. Other than that, he has made no attempts to reconcile or improve the distant relationship between him and his children. He has sent no letters, cards, or gifts to the children since he last saw them over 16 months ago. He has taken no steps to resume visits with his children. Thus, through his own choice to ignore the requirements of the custody orders, birth father has failed to establish and maintain any meaningful contact with the children since November of 2019.

For reasons discussed more fully below, this court has considered the effect of termination of parental rights on the children and has determined that it is in the children's best interest to terminate birth father's rights.

After finding that birth father has refused and failed to perform his parental duties, this Court analyzed birth father's explanation for his conduct, post abandonment conduct, and the effect of a termination on the children. This Court has found that birth father has not offered legitimate explanations for his conduct in refusing to take the necessary actions to regain visitation with his children. Further, the court has found that there has been little to no post-abandonment contact that reflects a desire on the part of birth father to reconcile the strained relationship and that the termination would not negatively affect the children since a termination is in their best interest to maintain a loving and stable home.

## CONSIDERATION OF GROUNDS FOR TERMINATION UNDER §2511(a)(2)

Refusal to Parent Causing Child to be Without Essential Care

22

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Termination is proper under section 2511(a)(2) where the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Under this statutory framework, the Court must engage in a three part inquiry asking whether there is continued incapacity, abuse, neglect or refusal, whether such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, and whether the incapacity, abuse, neglect or refusal will be remedied by the parent. Moreover, a parent's vow to cooperate, after a long period of not cooperating, may be properly rejected as untimely or disingenuous. *In Re J.W.*, 578 A.2d 952, 959 (Pa. Super. 1990). Grounds for termination under section 2511(a)(2) is not limited to affirmative misconduct and may include acts of refusal to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Here, birth father has displayed a pattern of refusal to parent that has caused his children to be without the care necessary for their mental well-being. Birth father's pattern of refusal to comply with custody orders, attempts at mediation and conciliation, and anger management display that he cannot or will not remedy the issue.

As discussed above, J.N. has refused, since November of 2019, to comply with various custody orders, compliance with which would allow him to see his children and develop a meaningful relationship with them. J.N. has also not hired a professional supervisor, has not attended scheduled mediations and conciliations aimed at resolving custody issues, and has not attended or even signed up for anger management classes. As

23

a result of this refusal, J.N. has not seen his children for more than sixteen months (since November 2019), causing an even more damaged relationship than existed between J.N. and his children when he was participating in visits.

J.N.'s continued refusal to parent has caused J.A.B. and N.A.B. to be without the love and affection of their biological father. It is unlikely that J.N. will be able to remedy this refusal. He has had since June (with respect to N.A.B.) and November (with respect to J.A.B.) 2019 to remedy this refusal to parent, however at each step of the way, J.N. has presented an excuse for non-compliance and has in no way shown serious efforts to remedy his refusal to parent.

The November 2019 custody order required J.N. to have supervised visits. His response to this order was only that he did not believe he needed a supervisor and did not like the supervisor selected by S.B. The June 17, 2020 order gave J.N. the opportunity to choose a professional supervisor of his own liking, which he did not do. This order also required J.N. to take anger management classes in order to resume visits, which he did not do because he didn't think he needed it. Through every step of the process that would allow J.N. to resume his parenting duties, J.N. has refused. It is unlikely that he will remedy this refusal. Although J.N. testified that he probably should have done the anger management, at this time, fourteen months after his refusal to comply began, any promise to cooperate is untimely. (N.T. 1/14/21 p. 151, 11-14).

Incapacity to Parent Causing Child to be Without Essential Care

The Pennsylvania Supreme Court has discussed termination of parental rights where the parent lacks capacity to parent:

24

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature . . . concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."

*In re William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

Despite a parent's wishes and desire to preserve a parental bond or role, in cases where the parent is incapable of providing basic necessities and will continue to suffer such parental incapacity, the focus of the Court must be not on the parent's wishes and desires, but the child's need for security, safety, permanency and well-being.

J.N.'s pattern of volatile behavior, dating back to at least 2017 and witnessed on multiple occasions by both children, has caused a wedge in his relationship with his children that results in J.N. being unable to provide them with stability, security, and the emotional support that a parent must provide.[1] He has not provided an environment where N.A.B. or J.A.B. feel stable, secure, and comfortable. Because he is unwilling to take the necessary steps to regain visits with his children, the causes of J.N.'s incapacity will not be remedied. J.N.'s long history of volatility and anger, paired with his unwillingness to attend anger management, make him incapable of providing security, safety and permanency for his children. In addition, since J.A.B.'s birthday in March 2018, J.N. has not sent either of the children any birthday or Christmas cards or presents. (N.T. 1/13/21 p. 246, 16-24).

With respect to each child, although Petitioners have not established continuing abuse or neglect, these facts indicate to me by clear and convincing evidence that J.N. (birth father) has both refused and is not capable of performing minimal parental duties.

---

[1] In order to keep the hearing focused on the current behavior of the parties and relationships with the children, this Court did not consider evidence predating 2017, although birth mother sought to present it.

25

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

This Court finds that petitioners have met their burden of establishing by clear and convincing evidence grounds for termination of the parental rights of J.N. under 23 Pa. C.S.A. § 2511 (a)(1) and (a)(2), with respect to each child.

## ANAYLYSIS UNDER §2511(b)

The focus in considering a petition to terminate parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the children.

[I]f the grounds for termination under subsection (a) are met, a court 'shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). (*quoting C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).

In *In re* E.M., [620 A.2d 481, 485 (Pa. 1993)], the Pennsylvania Superior Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (*quoting In re K.M.*, 53 A.3d at 791). In determining the effects of a termination, it is appropriate to consider whether the children have a bond with the foster parent. *Id.* at 268.

Section 2511(b) requires the Court to give primary consideration to the developmental, physical and emotional needs and welfare of the children. The Superior Court, interpreting the Adoption Act, has held that "the health and safety of the children

26

supersede all other considerations." *In re R.T.*, 778 A.2d 670, 678 (Pa. Super. 2001) (*quoting In Interest of Lilley*, 719 A.2d 327, 334 (Pa. Super. 1998). In considering the children's needs and welfare, a court must consider the role of the parental bond in the children's life. This Court is required by prior case decisions to evaluate whether a parental bond exists to such an extent that severing this natural relationship would be contrary to the needs and welfare of the each child. When conducting a bond analysis, the court is not required to use expert testimony and a formal bonding evaluation is not required. *In Re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

In this case, the testimony clearly established that the birth father has not maintained a relationship of love and affection with either of the children, and has not seen either of the children for a period of more than 16 months, and has not provided any emotional support to either of the children for at least this long, if not longer. As a result, there is currently no healthy parental bond between J.N. and either of the children, J.A.B. and N.A.B. Therefore, termination of J.N.'s parental rights would not be contrary to the needs and welfare of the children.

As to providing for the children's physical needs, S.B. and S.W. have provided for all of the children's needs. J.N. has not had visits with the children since November of 2019, and even before that only had limited visits with the children on Wednesday evenings and some weekends. S.B. testified that between 2017 and 2019 she would sometimes purchase dinner for J.N. and her children during J.N.'s custody time because he was unable to provide meals. (N.T. 1/13/21 p. 250, 3-13). She further testified that she had to change the custody agreement so that she had the children during dinner time in order to provide them meals. (N.T. 1/13/21 p. 251, 9-12). As mentioned above, since

27

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

J.A.B.'s birthday in March 2018, J.N. has not sent either of the children any birthday or Christmas cards or presents. (N.T. 1/13/21 p. 246, 16-24).

J.N. has not voluntarily complied with child support orders to provide financially for his children. He made two child support payments in 2020, the first in February and then not again until November. (N.T. 1/14/21 pp. 19- 20). His child support payments are currently garnished from his paycheck. (N.T. 1/14/21 p. 19, 19-21).

In this case, the testimony clearly established that the birth father has not maintained contact or sought opportunities to develop and maintain a parental relationship with the children since at least November 2019, a period of over seven months prior to the filing of the petition, and over 14 months at the time of the trial. As a result of this failure to maintain meaningful, loving and supportive contact with the children, any parental bond between the birth father than the children has been significantly undermined. As a result of his actions, and lack thereof, over the past few years, neither of J.N.'s children want to see him or talk to him. (N.T. 1/31/21 pp. 35, 3-6; 35, 18-21; 63-64; 102, 4-14; 130, 4-8). They do not have a bond with J.N.

Moreover, the children have a strong parental bond with petitioner step-father, S.W. N.A.B. asked S.W. if he could call him "dad" and J.A.B. soon after adopted this practice. (N.T. 1/31/21 pp. 18-19; 28-29). S.W. spends quality time with the children each day and bonds with them by engaging in their favorite activities with them: video games and going out to dinner for N.A.B. and shopping and crafts for J.A.B. (N.T. 1/13/21 pp. 16, 4-10; 26-27). J.A.B., who enjoys drawing pictures of her family, has only ever drawn her family to include herself, her brother, S.B., S.W., and sometimes S.B.'s father (J.A.B.'s grandfather). (N.T. 1/13/21 p. 38, 9-17). She has never drawn a family

28

picture portraying J.N. (N.T. 1/13/21 p. 39, 2-4). N.A.B. and J.A.B. have indicated they feel comfortable with S.W. and that the household is peaceful. (N.T. 1/14/21 p. 11, 11-14).

In this case, this birth father has not met the children's needs, has not provided for the children financially, has not visited with the children, and has not developed and maintained a parent-child relationship. The parent's desire to start over at this time is insufficient to meet the children's ongoing, day in and day out needs for consistent and reliable love, affection and responsibility.

## CONCLUSION

This Court concludes that the emotional needs and welfare of the children can best be met by termination of the parental rights of birth father, and that the children will not suffer a detriment as a result of termination of the parental rights of the birth father.

In addition, based upon the evidence presented, this Court finds that the children have developed a secure bond with their step-father, S.W., who is the prospective adoptive father, and that termination of parental rights so that the children may be adopted and achieve permanency will best serve the emotional and developmental needs and welfare of the children.

On this day, based upon the facts established by clear and convincing evidence, and the application of the law, final decrees terminating the parental rights of J.N. to N.A.B. and J.A.B. will be entered on the docket in conjunction with this opinion. An appeal from each of these final decrees may be taken to the Superior Court by filing a

29

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

notice of appeal within thirty (30) days of the entry on the docket of each final decree. *See*, Pennsylvania Rule of Appellate Procedure 341.

BY THE COURT:

_____<br>
LOIS E. MURPHY      A.J.

This Opinion e-filed March 30, 2021.
Copies to all counsel

_____
Secretary

Case# 2020-A0090-1.12 Received at Montgomery County Register of Wills Office on 03/30/2021 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.